IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **OVABRITE, INC.** | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. |
| v. | § § | |
| **NOVATRANS GROUP S.A.** | § § § | _____ |
| | § § | **JURY DEMANDED** |
| Defendant. | § § | |

## COMPLAINT

### The Parties

1. Ovabrite, Inc.("OI") is a Delaware corporation, whose registered office is 1679 S. DuPont Highway, Suite 100, Dover, Delaware 199901. Ovabrite is referred to herein as Plaintiff or OI.

2. Upon information and belief, Defendant Novatrans Group S.A. ("Defendant" or "NGS") is a privately held Swiss company, having its principal office at Le Vernets 2, CH-2035 Corcelles, Switzerland.

### JURISDICTION

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C.A. § 1332 because this action is between citizens of a State and citizens or subjects of a foreign state, and the amount in controversy exceeds $75,000 exclusive of interest and costs. This Court has jurisdiction over any Texas state law claims under principles of pendent and ancillary jurisdiction.

4.      Upon information and belief, Defendant provides certain goods or services using terahertz (THz) frequencies for spectrometry testing purposes.

5.      On or about May 5, 2016, Vital Farms, Inc. and Defendant entered into a "Master Joint Development and Product Distribution Agreement" (the "Agreement"). *See* **Exhibit A**. All rights and obligations in and to the Agreement were assigned and transferred to Ovabrite, with the approval of NGS. *See* **Exhibit B**.

6.      A dispute has arisen between the parties to the Agreement, which states that it shall be governed by and interpreted in accordance with the laws of the State of Texas, and that non-exclusive venue for any dispute arising thereunder shall be in the courts located in Austin, Texas. *See* Exhibit A.

## VENUE

7.      Venue is proper in this district pursuant to the provisions of the contract between the parties (Exhibit A) and pursuant to 28 U.S.C.A. § 1391(b) because one or more of the acts complained of took place in this district.

## GENERAL AVERMENTS

8.      OI is engaged in the egg production industry.

9.      The purpose of the Agreement was to develop and use THz spectrometry technology for the purposes of analyzing poultry eggs (for example, to determine the sex of a chicken prior to hatching).

10.     The parties' agreement contemplated that egg testing products and services would be offered and used on a worldwide basis, following successful completion by NGS of the development parameters.

11. Pursuant to the Agreement, OI paid $250,000 to NGS for "completion of a proof of concept." Additional funds were to be paid "upon successful completion" of the Alpha phase.

12. Upon information and belief, NGS did not complete the proof of concept and did not bring the Alpha phase to successful completion.

13. Upon information and belief, instead of completing proof of concept or successfully completing the Alpha stage, pursuant to the Agreement, NGS insisted on further payment and claimed that the following steps were needed:

(1) shorten the distance between the THz transmitter and THz receiver from appx. 13 cm to appx. 6 mm and re-calibrate the setup thereby reducing 'noise' caused by humidity in ambient air;

(2) create a more uniform 'membrane' to trap the VOCs that off-gas from the egg;

(3) rerun multiple hundred egg scans; and,

(4) analyze the new spectra in a machine-learning environment.

14. Upon information and belief, NGS has failed and refused to take the commercially reasonable steps necessary to bring the alpha phase to completion, despite the fact that that is what NGS was paid to do.

15. By way of example, upon information and belief, and contrary to the terms of the Agreement, NGS has not demonstrated that its proposed system can detect volatile organic compounds (VOCs) in sufficient amount to determine the gender and fertility status of an egg. Upon information and belief, NGS has not shown itself able to use the data to determine such status with more than 98% accuracy in less than three seconds per egg.

16. By way of further example, upon information and belief, and contrary to the terms of the Agreement, NGS has changed the distances and procedures involved in testing

methodologies, it has not proven able to detect fertility status, the time for its detection cycles is considerably longer than called for in the Agreement, and the methodology used by NGS does not establish milestone achievement.

17. Upon information and belief, and contrary to the terms of the Agreement, NGS has refused to send to OI any blind studies of the program called for in the Agreement.

18. Upon information and belief, and contrary to the terms of the Agreement, the machine learning algorithm allegedly used by NGS is not only incapable of making blind test predictions, but it is also incapable of making fertile/infertile predictions.

19. Upon information and belief, and contrary to the terms of the Agreement and/or the request of OI, NGS has failed and refused to make the NGS machine learning algorithm available for inspection and review by OI.

20. Upon information and belief, NGS has not used rigorous scientific methodologies to-date, has not utilized blind studies, and has not documented all testing procedures, data, and media, to share with OI, as per the Agreement.

21. In addition to the $250,000 paid to NGS, OI has spent well over an additional $400,000, not including the time for its personnel, attempting to salvage the project as set forth in the Agreement.

22. Upon information and belief, NGS not only has not performed its obligations pursuant to the Agreement, NGS had no intention or ability to perform its obligations pursuant to the Agreement.

23. When it became apparent that NGS had not performed, and was not going to perform its obligations, OI suggested a "separation agreement," whereby the parties would walk away from the Agreement, and each party could use certain intellectual property developed for its

own respective industries (*e.g.*, NGS would not use its THz technology for the poultry industry). *See* correspondence attached hereto as **Exhibit C**.

24.     Upon information and belief, NGS has refused to consider the general terms of a separation agreement and has insisted that it is keeping all relevant intellectual property, even though some enhancements and improvements to the intellectual property at issue were created by OI, not NGS (*e.g.*, standardized membrane evacuated test chamber).

25.     Upon information and belief, OI has provided certain confidential and proprietary information to NGS, which NGS has used, or intends to use, in the conduct of its business, to the great harm and detriment of OI.

26.     Upon information and belief, NGS has impermissibly utilized its acquired knowledge regarding OI and OI's business plan, including confidential and proprietary information of OI, to offer, manufacture and sell NGS products and services in direct competition with OI, and to competitors of OI.

## COUNT I - TRADE SECRET MISAPPROPRIATION

27.     OI hereby repeats the allegations of paragraphs 1-26 above as if fully set forth herein.

28.     OI has developed certain trade secrets, including but not limited to certain confidential and proprietary information regarding its business, its customers, the poultry business, and other matters related to OI's business and industry. Upon information and belief, these trade secrets are not generally known outside of OI; they have been guarded by OI to ensure that they are not generally disclosed; and they would be difficult to be properly acquired or duplicated by third parties.

29.     The trade secrets are valuable and important to OI in the conduct of its business.

30. OI enjoys the right, by reason of its ownership of the trade secrets, to use and enjoy the trade secrets.

31. The trade secrets were communicated to NGS and its employees. Upon and belief, NGS was aware, or should have been aware, of the proprietary and confidential nature of the trade secrets.

32. NGS' unlawful use of the trade secrets without OI authorization constitutes a breach of confidence, and directly and proximately caused damage to OI in excess of the jurisdictional limits of this Court.

33. The acts of Defendant complained of above constitute attempted trade secret misappropriation and trade secret misappropriation under the common law of the state of Texas.

### COUNT II - UNFAIR BUSINESS PRACTICES AND MISAPPROPRIATION OF BUSINESS AND/OR TRADE VALUE

34. OI hereby repeats the allegations of paragraphs 1-34 above as if fully set forth herein.

35. Upon information and belief, the OI proprietary and confidential information, including patentable and/or copyrightable information and materials created by OI, constitutes a tangible and/or intangible trade value.

36. Upon information and belief, the Defendant has attempted to appropriate, and/or has appropriated, OI's tangible and/or intangible trade values by the means set forth in the incorporated paragraphs above.

37. Upon information and belief, Defendant's appropriation of OI's tangible and/or intangible trade values by the means set forth in the incorporated paragraphs above has directly and proximately caused harm to the commercial relations of OI in excess of the jurisdictional limits

of this Court.

38. Alternatively, the actions of Defendant, as set forth in the paragraphs incorporated herein, constitute unfair business practices which have directly and proximately caused damages to OI and harm to OI's commercial relations.

### COUNT III - UNFAIR COMPETITION (MISAPPROPRIATION)

39. OI hereby repeats the allegations of paragraphs 1-38 above as if fully set forth herein.

40. OI has invested extensive time, labor, skill, money, and resources in the design, development, and/or creation of certain information, business materials, ideas, improvements or enhancements.

41. Upon information and belief, Defendant has willfully copied and/or appropriated OI's information, materials, ideas, improvements and/or enhancements, in competition with OI, or in connection with OI's competitors, which thereby enabled Defendant (or OI's competitors) to gain a special advantage in that competition.

42. Upon information and belief, Defendant's misappropriation of such information, materials, ideas, improvements and/or enhancements has commercially damaged OI in excess of the jurisdictional limits of this Court.

43. The acts of Defendants complained of above constitute unfair competition and misappropriation actionable under the common law of the State of Texas.

### COUNT IV - TORTIOUS INTERFERENCE WITH BUSINESS/CONTRACTUAL RELATIONS

44. OI repeats the allegations of paragraphs 1 - 43 above as if fully set forth herein.

45.     Upon information and belief, Defendant has used, or intends to use, the information, materials, ideas, improvements and/or enhancements created or provided by OI, in connection with offering NGS services to direct competitors to OI in the poultry industry (*e.g.*, to use THz technology for determining the sex of a chicken prior to hatching in connection with or on behalf of OI's competitors and/or vendors in the industry).

46.     Upon information and belief, Defendant's actions complained of above constitute, or would constitute unless enjoined, tortious interference with business and/or contractual relations under the common law of the state of Texas.

## COUNT V - CONVERSION

47.     OI hereby repeats the allegations of paragraphs 1 - 47 above as if fully set forth herein.

48.     Upon information and belief, Defendant has wrongfully exercised dominion or control over, and/or wrongfully took, misappropriated or converted OI's personal property (*e.g.*, the information, materials, ideas, improvements and/or enhancements created by OI or provided by OI to NGS) in denial of, or inconsistent with, OI rights in such property, to the detriment and damage of OI in excess of the jurisdictional limits of this Court.

## COUNT VI - BREACH OF CONTRACT

49.     OI hereby repeats the allegations of paragraphs 1 - 49 above as if fully set forth herein.

50.     Upon information and belief, OI is the assignee of all rights in and to a valid written contract signed by Vital Farms, Inc. and NGS.  OI has performed its obligations pursuant to the terms of the Agreement.  Defendant has breached the Agreement by not performing or fulfilling its obligations under the Agreement, thereby resulting in monetary harm to OI in excess of the jurisdictional limits of this Court.

## COUNT VII - FRAUD

51. OI hereby repeats the allegations of paragraphs 1 - 50 above as if fully set forth herein.

52. Upon information and belief, Defendant made one or more material representations that were false (*e.g.*, NGS' ability to test for egg fertility or sex as per the terms of the Agreement). Defendant knew its representations were false, or it made such representations recklessly, and as a positive assertion (*e.g.*, with respect to its willingness and ability to perform) without any knowledge of its truth. Defendant intended to induce OI to act upon the false or reckless representations. OI relied on the false and/or reckless representations of NGS, which caused injury and harm to OI in excess of the jurisdictional limits of this Court.

## JURY DEMAND

53. OI demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, OI prays for judgment against the Defendant, and for relief including:

A. Upon proper application, a preliminary and/or permanent injunction enjoining Defendant against continuation of the illegal acts recited above.

B. An accounting for and an award of the profits earned by Defendant as a result of Defendant's illegal acts and the damages suffered by OI as a result of Defendant's acts.

C. An award of damages for Defendant's violations outlined above.

D. An award of treble damages and an award of punitive or exemplary damages.

E. An award of costs and reasonable attorneys' fees.

F. An award or pre- and post-judgment interest.

G. All other relief as the Court may deem just.

Respectfully submitted,

/s/ Dwayne K. Goetzel

Dwayne K. Goetzel
Texas Bar No. 08059500
Ryan T. Beard
Texas Bar No. 24012264
Meyertons, Hood, Kivlin, Kowert & Goetzel, P.C.
Austin, Texas 78746
(512) 853-8800 (telephone)
(512) 853-8801 (facsimile)

**ATTORNEYS FOR PLAINTIFF
OVABRITE, INC.**